UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**MARKEITH DAIS,**

       **Plaintiff,**

  v.

**UNITED STATES OF AMERICA,** *et al.*,

       **Defendants.**

Civ. No. 2:11-cv-03986 (WJM)

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs Markeith Dais and Michelle Dais-Harvey filed this medical malpractice action against the United States of America and Dr. Gurmit Chilana (collectively "Defendants"). This matter comes before the Court on the United States of America's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss is **GRANTED**.

  **I.**    **BACKGROUND**

     **A.**  **LEGAL FRAMEWORK**

      It is well established that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Library of Congress v. Shaw*, 478 U.S. 310, 315 (1986) ("As sovereign, the United States, in the absence of its consent, is immune from suit"). Congress may waive sovereign immunity through unequivocal statutory language, but all waivers of sovereign immunity must be narrowly construed. *Library of Congress*, 478 U.S. at 318-21.

      The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, is a limited waiver of the sovereign immunity by the United States for negligence of federal employees committed while acting within the scope of their federal employment. 28 U.S.C. § 2674. In such cases, the federal employee is immune from suit and the plaintiff's exclusive right of action lies against the United States. 28 U.S.C. § 2679(b).

The FTCA protects federal employees by paying judgments out of the United States Treasury.

Under the Public Health Service Act, private, non-governmental health centers that supply medical care to underserved populations may apply for federal grant moneys. 42 U.S.C. § 254b(e). In 1992, Congress amended that statute by passing the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. §§ 233(a)-(n), allowing these private health centers to apply to the Department of Health and Human Services ("HHS") to be "deemed a federal employee" of the Public Health Service. 42 U.S.C. § 233(g)(1)(D). If the Secretary of HHS deems the health center to be a federal employee, then that entity is immune from suit and receives protection under the FTCA. 42 U.S.C. § 233(a). Congress's intent in passing the FSHCAA was to increase the availability of funds for the provision of primary health care services to low income populations by reducing the health centers' need to purchase medical malpractice liability insurance. *Miller v. Toatley*, 137 F. Supp. 2d 724, 725 (W.D. La. 2000), *aff'd* 251 F.3d 157 (5th Cir. 2001).

### B. FACTS

Dr. Gurmit Chilana is an obstetrician who worked in his own private practice. Declaration of Pamela R. Perron ("Perron Decl.") Ex. B, Chilana Dep. 20:10-17, ECF No. 33-2. In the late 1980s or early 1990s, Dr. Chilana started working for the Paterson Community Health Center ("PCHC") on a part-time basis. Chilana Dep. 16:19-25. The PCHC was deemed to be a federal employee of the Public Health Service for the period December 15, 1993 through January 1, 1996. Perron Decl. Ex. A. In 1993-94, Dr. Chilana provided obstetrical services to PCHC patients for approximately four hours a week. Perron Decl. Ex. C, Garner 15:13-17, 22:2-23:13. In 1994, Dr. Chilana carried his own professional malpractice insurance through Medical Inter-Insurance Exchange ("MIIX"). Perron Decl. Ex. E. The policy provided for broad coverage of "[i]njury arising out of the rendering of or failure to render, on or after the retroactive date, professional services by the individual insured." Perron Decl. Ex. E, Policy at 1, ¶ I.

Michelle Dais-Harvey, the mother of Markeith Dais, received prenatal care at the PCHC. Ms. Dais-Harvey first presented to the PCHC on December 3, 1993. Dr. Chilana, among others, provided Ms. Dais-Harvey's prenatal care. Plaintiffs allege that, during the course of Ms. Dais-Harvey's care, the Dr. Chilana failed to diagnose an inter-uterine growth restriction resulting in the birth of Plaintiff, Markeith Dais, on July 12, 1994, with multiple, severe disabilities.

### C. PROCEDURAL HISTORY

Plaintiffs initially filed an action in state court on June 21, 2007 against Dr. Chilana and the PCHC. *Dais and Dais-Harvey v. PCHC, Chilana, et al.*, Superior Court of New Jersey, Passaic County PAS-L-2613-07. On August 10, 2010, the United States

Attorney removed the action to this Court based upon certifications that the PCHC and Dr. Chilana were deemed federal employees acting within the scope of federal employment.

The United States then moved to dismiss for lack of subject-matter jurisdiction on the ground that Plaintiffs had failed to exhaust their administrative remedies. In response, Plaintiffs argued that Dr. Chilana did not qualify as a federal employee. *See Dais and Dais-Harvey v. PCHC, Chilana, et al.*, Civ. No. 10-4099, ECF No. 7. The United States agreed, and withdrew its certification that Dr. Chilana had acted within scope of federal employment. The United States then joined Plaintiffs in requesting that the case against Dr. Chilana be remanded. *See Dais and Dais-Harvey*, ECF No. 9. On October 21, 2010, this Court issued an Opinion dismissing the case without prejudice to allow Plaintiffs to exhaust their administrative remedies. *See Dais and Dais-Harvey*, October 21, 2010 Opinion, ECF No. 10. In its Opinion, the Court found that Dr. Chilana met the requirements to be treated as a federal employee, but nevertheless remanded the case against Dr. Chilana to honor the request of both parties. *Id.* at 7.

On November 22, 2010, the United States filed a motion to alter the judgment. *See Dais and Dais-Harvey*, ECF No. 13. On April 18, 2011, the Court issued a second Opinion acknowledging that the Court's inquiry should have ended after it determined that it did not have subject-matter jurisdiction over the action. *See Dais and Dais-Harvey*, April 18, 2011 Opinion, ECF No. 17. The Court vacated most of its prior ruling, stating that "any findings made in the October 21, 2010 Letter Opinion, beyond the finding that Plaintiffs' complaint should be dismissed without prejudice pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies, should be disregarded." April 18, 2011 Opinion at 4.

Plaintiffs filed an administrative tort claim with HHS on November 29, 2010. On July 12, 2011, after six months had elapsed without a final disposition of Plaintiffs' administrative claim, Plaintiffs filed a new Complaint in this Court against the United States and Dr. Chilana. On February 2, 2012, Plaintiffs filed an Amended Complaint that added allegations of negligence against unidentified PCHC employees who failed to carry out testing ordered by Dr. Chilana. The United States now moves to dismiss all the claims against it that are based on the conduct of Dr. Chilana.

## II.   LEGAL STANDARD

There are two types of challenges to subject-matter jurisdiction: (1) facial attacks, which challenge the allegations of the complaint on their face; and (2) factual attacks, which challenge the existence of subject-matter jurisdiction, quite apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack, as is being made here, the Court is free to consider extrinsic evidence because the Court's very power to hear the case is at issue. *Id.*; *Gotha v. United States*, 115 F.3d 176, 179 (3rd Cir. 1997). The plaintiff bears the burden of proof that

3

jurisdiction does in fact exist. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3rd Cir. 2000). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of the jurisdictional claim. *Mortensen*, 549 F.2d at 891.

## III. DISCUSSION

The only question presented by this motion is whether Dr. Chilana was deemed a federal employee under the FSHCAA when the alleged malpractice took place. The Court finds that Dr. Chilana was *not* eligible to be deemed a federal employee.

According to Plaintiff's initial disclosures, the omissions giving rise to the alleged malpractice all occurred in 1994. Perron Decl. Exs. D ¶ 4, F, and G. The version of the FSHCAA in effect in 1994 provided that a physician who was considered an "officer, employee, or contractor" of a federally funded health center would be deemed to be a federal employee. 42 U.S.C. § 233(g)(1) (West 1994), Pub. L. 102-501, sec. 2 (Oct. 4, 1992). The statute further provided that:

> (5) [A]n individual may be considered a contractor of [a federally funded health center] only if — . . .
>
> (B) in the case of an individual who normally performs on average less than 32½ hours of services per week for the entity for the period of the contract and is a licensed or certified provider of obstetrical services —
>
> (i) the individual's medical malpractice liability insurance coverage does not extend to services performed by the individual for the entity under the contract.

*Id.* The deeming letter sent to PCHC similarly stated that:

> All officers, employees, and full-time contractors (minimum 32.5 hours per week) . . . are also deemed to be employees of the Federal Government . . . as are part-time contractors who are licensed or certified providers of obstetrical services and whose individual medical malpractice liability insurance coverage does not extend to services performed for this grantee.

Dec. 8, 1993 Deeming Letter at 1-2, Perron Decl. Ex. A.

In this case, the undisputed facts establish that Dr. Chilana was not a contractor of a federally funded health center during the relevant time period. It is true that, in 1994, Dr. Chilana was a licensed provider of obstetrical services and that the PCHC was a federally funded health center. However, Dr. Chilana performed on average less than

32½ hours of services per week for the PCHC.  *See* Perron Decl. Ex. C (Dr. Chilana provided obstetrical services to PCHC patients for approximately four hours a week).  Further, the medical malpractice liability insurance coverage that Dr. Chilana received through his MIIX policy extended to the services that he performed for the PCHC.  *See* Perron Decl. Ex. E, Policy at 1, ¶ I (stating that coverage is provided for "[i]njury arising out of the rendering of or failure to render, on or after the retroactive date, professional services by the individual insured.").  As such, Dr. Chilana was not eligible to be deemed a federal employee.

Plaintiffs argue that, under the current version of the statute, part-time obstetricians qualify as federal employees even if they are covered by their own malpractice insurance.  However, it is well-established that courts must apply the law as it existed at the time of the alleged wrongdoing, not the law that exists today.  *See Landgraf v. USI Film Prod.*, 511 U.S. 224, 272-73 (1994).[1]

In conclusion, Dr. Chilana was not a deemed federal employee, and absent negligence on the part of a federal employee, the United States cannot be held liable under the FTCA.  Because Plaintiffs cannot establish that the Court has subject matter jurisdiction over this action, the motion to dismiss must be granted.  The Court notes that Plaintiffs, through discovery, could identify other PCHC employees who were eligible to be deemed federal employees.  Accordingly, the Amended Complaint is dismissed without prejudice.

## IV.    CONCLUSION

For the reasons stated above, the United States of America's motion to dismiss is **GRANTED**, and the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 18, 2012**

---

[1] As explained above, the Court vacated its October 21, 2010 finding that Dr. Chilana was a federal employee.  The Court notes that its October 21, 2010 finding was based on the current version of the statute because the Court was not presented with the 1994 version of the statute at that time.